# Exhibit 1

## COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Collective Action Settlement Agreement ("Agreement") is made by and between Maria Rivas, Valter Ramos Brano, Gabriel DeJesus Tobón, and Euprides Arango (collectively referred to throughout this Agreement as "Named Plaintiffs") and the Settlement Class (as defined below in paragraph 1) on the one hand, and Chucks Cafe, Inc. d/b/a The Paramount Beacon Hill ("The Paramount Beacon Hill"), 667 East Broadway, Inc. d/b/a The Paramount South Boston (The Paramount South Boston), Michael G. Conlon, Jr., Joseph Greene, 21st, Inc. d/b/a The 21st Amendment ("The 21st Amendment"), and 1732 Centre Street, Inc. d/b/a West on Centre ("West on Centre") (collectively, "Defendants") on the other hand, to voluntarily and completely settle and resolve the matter of *Rivas et al. v. Chucks Cafe, Inc. d/b/a The Paramount Beacon Hill et al.*, Civil Action No. 1:15-cv-11851 (the "Lawsuit"). The Named Plaintiffs, the Settlement Class, and the Defendant may be separately referred to as a "party," and may be collectively referred to as the "parties."

The parties hereby agree as follows:

1. <u>Settlement Class Defined</u>:  Solely for the purposes of this settlement, the parties agree to Fair Labor Standards Act Section 216(b) collective action treatment with respect to all claims raised in the Lawsuit. The Settlement Class is defined as all persons employed by Defendants as hourly (non-exempt) positions who worked at The Paramount Beacon Hill, The Paramount South Boston, The 21st Amendment, and/or West on Centre since May 15, 2012 until the date of this Agreement (each a "class member").

2. <u>Court Approval of Settlement</u>:  The parties agree to cooperate as necessary to obtain court approval of this settlement. In the event the Agreement is terminated pursuant to Section 12, the parties agree to continue to negotiate in good faith an agreement with terms that are acceptable to the Court, provided that in no event shall Defendants' payment obligation exceed that set forth herein. The parties agree to cooperate to seek Court approval of this proposed class action settlement as follows:

   a. The parties will request a Fair Labor Standards Act Section 216(b) Collective Action Settlement Fairness Hearing in late March 2016.

   b. Defendants will provide to Plaintiffs' counsel the names and last known addresses for all class members;

   c. Plaintiffs' counsel will be responsible for drafting a Collective Action Notice and Claim/Opt-in Form to be sent to class members in advance of the court hearing (subject to Defendants' review and approval). This notice shall be translated by Plaintiff's counsel into Spanish and Portuguese;

      d.      Plaintiffs' counsel will be responsible for drafting a Motion for Collective Action Certification and Settlement Approval, subject to Defendants' review and approval prior to being filed with the Court.

3.      <u>Settlement Fund</u>:  The total amount to be paid by Defendant in settlement of the claims resolved by this Agreement is $592,718.61. ("Settlement Fund"). Aside from the Settlement Fund and the Defendants' share of the pay roll taxes, under no circumstances shall Defendants be required to pay more than the Settlement Fund for any reason under this Agreement to settle and resolve this matter. As set forth in Section 4, within forty-five (45) days of the Court's final approval of the settlement, Defendants will make the following payments:

      a.      $10,000 as incentive payments for each Named Plaintiff, to be paid as 1099 non-wage income for services rendered in their capacities as class representatives, totaling $40,000. Defendants shall submit these checks to Plaintiffs' counsel, made payable to the Named Plaintiffs, and Plaintiffs' counsel shall distribute them to the Named Plaintiffs. In exchange, each Named Plaintiff will provide a general release of all claims to Defendants as provided in Paragraph 9. However, the parties recognize that the Court makes the final decision on the amount of the incentive payment and the Agreement is not contingent of the Court's approval of any incentive payment;

      b.      $355,145.74 to be paid to class members for the period May 15, 2012, until the date of this Agreement (the "Payment Period") who submit timely claim/opt-in forms to participate in this collective action settlement (to be paid half as W2 income (representing overtime back wages) and half as 1099 income (representing penalties under applicable law));

      c.      $197,572.87 in attorneys' fees and costs, to be paid as 1099 non-wage income by check payable to Lichten & Liss-Riordan, P.C

4.      Procedure for Claim Administration and Payment:  Plaintiffs' counsel will be responsible for:  mailing out class notices and claim forms to class members; following up on any undeliverable claim forms, including making reasonable attempts to locate class members where the first notice is returned as undeliverable at the address provided; responding to class members' inquiries; collecting claim forms from class members; sending reminder notices as appropriate; and calculating class members' settlement payments based on data provided by Defendants. Class Members will be given thirty (30) days from the date the Class Notice is sent to submit claim forms to receive shares from the Settlement Fund or to submit objections.  Additionally, Plaintiffs' counsel may accept late claim forms provided that they are submitted within a

reasonable time prior to the distribution of the Settlement Fund. In the event that a claim form is timely, but not complete, Plaintiffs' counsel shall immediately notify the class member of the deficiency and the class member shall have 15 days following the notice of the deficiency to cure the deficiency.  During the claim period, Plaintiffs' counsel shall provide periodic updates at Defendants' counsel's request of total notices mailed and claim forms and opt-outs and objections received.  Plaintiffs' counsel will calculate the settlement distribution to class members based on the unpaid overtime owed to each class member, as may be reasonably ascertained from Defendants' records. Additionally, Plaintiffs' counsel will apply a formula that gives greater weight to employees who submitted opt-in forms to Plaintiffs' counsel prior to the date of the Settlement Agreement.

Within fifteen (15) days after the Court's final approval of the Settlement, Plaintiffs' counsel shall provide to Defendants' counsel: (1) a spreadsheet showing amounts owed to each class member; and (2) Plaintiffs' counsel's tax identification number.  Within forty-five (45) days after final Court approval of the Settlement, Defendants shall send to Plaintiffs' counsel the checks for class members, as well as the Incentive Payment checks for the Named Plaintiffs, and the check for the Attorneys' Payment.  Plaintiffs' counsel shall mail the individual settlement amounts to each class claimant, by first class mail to the last-known address no later than fifteen (15) days after the Defendants have submitted the Settlement Funds to Plaintiffs' counsel.

     5.    <u>Class Payments</u>:  Payments to class members will be made in two checks: 50% of each class member's settlement share will be paid as 1099 income, with no withholdings; and 50% of each class member's settlement share will be paid as W2 income, with the employee's share of taxes deducted. Defendants will separately pay the employer's share of taxes, and that amount will not come from the Settlement fund. Nothing in this Agreement shall be construed to require Defendants to make any payments to compensate Class Members or have any liability whatsoever to class members for any adverse tax effect associated with any payments or benefits or for any failure to deduct or withhold from any payments of benefits.

     6.    <u>Residual Funds</u>:  In the event that any employee does not submit a timely opt-in/claim form, his or her settlement share shall be held by Defendants as residual funds, and after the distribution described in paragraphs 4 and 5 above, these residual funds, if any, will be held by Defendants for an additional one hundred twenty (120) days and will be used to pay late claims and to resolve any disputes which may arise. After the one hundred twenty (120) days has elapsed, any remaining unclaimed funds will be distributed to all Settlement Class members who have submitted claim forms, regardless of when they filed their claim forms, in an amount proportional to the settlement amount each Settlement Class member received as an initial distribution, except that those individuals who would only be entitled to less than $50 of the residual funds will not receive a second distribution. Plaintiffs' counsel will be responsible for providing to Defendants this calculation for the residual fund distribution. The Parties agree that no amount of the Settlement Fund will revert back to Defendants. Ninety (90)

days after the residual funds are distributed, the value of any uncashed checks or remaining funds (for which the parties cannot locate the class member in order for them to cash their check) will be distributed on a *cy pres* basis to the Restaurant Opportunities Center of Boston.

7.  <u>Workplace Concern Process</u>:  Defendants shall, within thirty (30) days of the date that the Court grants final approval of the settlement, institute a process in each of its restaurants that shall allow employees to raise concerns regarding the workplace to a party other than their direct supervisor without the risk of retaliation.

8.  <u>Class Member Release</u>.  As of the date upon which the Court grants final approval of this Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, each individual class member and class representative forever and fully releases Defendants as defined in Paragraph 1, together with all of their members, owners, stockholders, predecessors, successors, assigns, parents, subsidiaries, affiliates, partners, joint ventures and investors, and their respective agents, directors, officers, employees, shareholders, executives, counsel, members, insurers, fiduciaries, representatives, attorneys and benefit plans (collectively the "Released Parties") from all claims asserted in the Plaintiffs' First Amended Complaint, all claims arising out of the facts alleged in the First Amended complaint, including any and all claims for unpaid wages, including overtime compensation, and retaliation.

9.  <u>Named Plaintiffs' General Release of All Claims</u>:  Named Plaintiffs further agree to be bound by a general release of all claims, by which each agrees to release and discharge the Released Parties generally from all charges, complaints, claims, promises, agreements, causes of action, damages, and debts of any nature whatsoever, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or concerning the existence in the future ("Claims"), which each has, claims to have, ever had, or ever claimed to have had against Released Parties through the date of execution of this Agreement.  This general release of all Claims includes any releasable Claims under contract law, the regulations and the statutory and common law of any state, including the Commonwealth of Massachusetts, and any federal, state or local statute, ordinance or regulation including, without implication of limitation, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Fair Labor Standards Act, the Massachusetts Fair Employment Practices Act, Massachusetts General Laws (including Chapter 151B), Massachusetts' wage and hour laws, the Family and Medical Leave Act, and the Employee Retirement Income Securities Act.  That said, nothing contained in this Agreement prevents the Named Plaintiffs from cooperating with or participating in any investigation or proceeding before the Equal Employment Opportunity Commission or the Massachusetts Commission Against Discrimination, except that each acknowledges that they shall not be able to recover any monetary benefits in connection with any such

claim, charge or proceeding. Named Plaintiffs and Defendants agree that this waiver and release does not apply to any rights or claims that, by law, cannot be waived.

10. <u>No Prior Assignment</u>: Plaintiffs' counsel and the class members represent, covenant, and warrant that they maintain complete control over the disposition of their claims, and have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion, any liability, claims, demand, cause of action, rights herein released and discharged except as set forth herein. In the event the class members have assigned all or a portion of their claims, the class members agree to indemnify, defend, and hold harmless the Released Parties from any claim by any assignee, lien holder, or statutory subrogee relating in any way to the claims released in this Agreement.

11. <u>No Admission of Liability</u>: The mutual covenants and promises contained herein are not to be construed as admissions of liability on behalf of any of the parties. On the contrary, each party expressly denies any liability whatsoever to the other party. The parties further agree that neither this Agreement nor any part of it is to be construed, used or admitted into evidence in any proceeding, judicial, administrative or otherwise, now pending or subsequently instituted, except one brought for the purpose of enforcing any rights, obligations, or duties arising out of this Agreement, or as otherwise required by law. In the event that this Agreement is not finally consummated, it and any preceding settlement discussions shall be without prejudice to any party and shall not be used in any subsequent proceedings, judicial, administrative or otherwise.

12. <u>Termination</u>: Any party may terminate the Agreement by written notice within twenty (20) business days if the Court declines to enter the Preliminary Approval Order, Final Approval Order or Judgment in substantially the form submitted by the parties, or the settlement as agreed does not become final for any other reason.

13. Effect of Termination: Termination shall have the following effects:

a. The Agreement shall be terminated and shall have no force or effect, and neither of the parties shall be bound by any of its terms;

b. Defendants shall have no obligation to pay the Settlement Fund or make any payment under the Agreement to any party, class member or Plaintiffs' counsel in the event the Agreement is terminated and any amounts having already been paid shall immediately be refunded to Defendants;

c. The Preliminary Approval Order, Final Approval Order and/or Judgment, including any order of conditional class certification, shall be void and vacated;

    d.    The Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the parties, all of whom shall be restored to their respective positions in the Action prior to the Settlement except as enumerated herein;

    e.    Neither this Agreement, nor any ancillary documents, actions, statements and communications nor filings in furtherance of settlement (including all matters associated with the mediation and/or settlement negotiations) shall be admissible or offered into evidence in the Lawsuit or any other action for any purpose whatsoever; and

    f.    If the Agreement is terminated, the parties agree to work cooperatively to request jointly that the Court enter a reasonable schedule to proceed with the Lawsuit, including new deadlines for responding to the complaint, the completion of discovery, class certification briefing, expert reports, and dispositive motion briefing.

14.    <u>Dismissal</u>:  Upon final Court approval of the settlement, and the expiration of any right of appeal, Plaintiffs shall effectuate a dismissal of the Complaint with prejudice.

15.    <u>Miscellaneous</u>

15.1    <u>Binding Effect</u>:  If the Court grants final approval, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, executors, administrators, assigns, officers, and shareholders.

15.2    <u>No Collateral Attack</u>:  This Agreement and Settlement shall not be subject to collateral attack by the Named Plaintiffs or the class members.  Such prohibited collateral attacks shall include but not be limited to claims that a class member settlement payment was improperly calculated, that improper deductions or withholdings were made from a settlement payment, or that the class member failed to submit a timely or valid claim for any reason.

15.3    <u>Authority to Sign</u>:  The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the parties hereto, including all class members, to the terms and conditions hereof.

15.4    <u>Counterparts</u>:  This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one Agreement, shall be binding upon and effective as to all parties.  Facsimile or scanned signatures shall have the same effect as original signatures.

15.5     Entire Agreement:  This Agreement constitutes the entire agreement between the parties relating to the settlement and transactions contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein.  This Agreement supersedes all prior agreements and understandings among the parties with respect to the settlement of the Lawsuit.

15.6     Modification:  This Agreement may not be changed, altered, waived or modified, except in a written agreement that is both signed by the parties, and their counsel.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties hereto.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

15.7.    Enforcement and Governing Law:  This Agreement shall be governed, construed, and interpreted, shall be determined in accordance with Massachusetts law, without regard to its conflicts of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such Federal law shall govern.

_____
On behalf of the PLAINTIFFS
And the Settlement Class

Shannon Liss-Riordan, BBO #640716
Thomas Fowler, BBO #688521
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com
tfowler@llrlaw.com

_____   _____
On behalf of the DEFENDANTS            Chuck's Cafe, Inc. d/b/a The
Christopher P. Litterio, BBO #551098   Paramount Beacon Hill, Defendant
David W. Robinson, BBO #648605
Ruberto Israel & Weiner, P.C.          _____
255 State Street, 7th Floor
Boston, MA 02109                       667 East Broadway, Inc. d/b/a The
(617) 742-4200                         Paramount South Boston, Defendant
dwr@riw.com
cpl@riw.com


_____
21st, Inc. d/b/a The 21st Amendment,
Defendant

_____
1732 Centre Street, Inc. d/b/a West on
Centre, Defendant

_____
Michael G. Conlon, Jr., Defendant

_____
Joseph Greene, Defendant

8